OPINION OF THE COURT
Thomas J. DiSalvo, J.
Facts of the Case
The defendant was charged with common-law driving while *448 intoxicated in violation of Vehicle and Traffic Law § 1192 (3) on September 14, 2002 at 12:48 a.m. The defendant was arrested after entering a sobriety checkpoint operated by the Webster Police Department on the eastbound section of New York State Route 104 just prior to the Dewitt Road overpass. A Scott hearing was conducted on June 18, 2003 to determine if the sobriety checkpoint was properly conducted.[1] More particularly the defense argues that the location of the sobriety checkpoint was not properly selected. In his memorandum of law defense counsel states that
“Sergeant Small testified that although Webster Police Chief Gerald Pickering authorized the checkpoint, there was no discussion between himself and Chief Pickering as to exactly where the checkpoint would be placed. That was left to the unfettered discretion of Sergeant Small as supervisor of the checkpoint detail.
“Sergeant Small allegedly selected the location according to the Directive,[2] based upon the history of past violations, as well as safety considerations.” (Emphasis taken from defense counsel’s memorandum of law.)
Issues Presented
Must the location of a sobriety checkpoint be based on empirical evidence of prior driving while intoxicated arrests?
Must the location of a sobriety checkpoint be specifically authorized by the chief of police?
Legal Analysis
A. History of Alcohol Related Arrests
In his memorandum of law, Mr. Corletta correctly indicates that the Webster Police Directive issued for September 13, 2002 to September 14, 2002 “states history of past violations was taken into consideration, and Sergeant small also testified as such.” However, a review of said paragraph IV of General Order 504, to which that directive is attached, reads as follows:
“IV Establishing, Cancelling Roadblocks and Checkpoints
*449 “A. Criteria to be used in planning a roadblock, although not all inclusive, are the following:
“1. Site Selection:
“a. Sites must be approved by a supervisor prior to commencing the checkpoint or roadblock.
“b. The site must be in an area that will minimize the risk to the public and/or the police.
“c. The supervisor will ensure that all guidelines established by this order are in effect and are communicated to the officers manning the checkpoint or roadblock.
“d. In the case of a sobriety checkpoint, the supervisor will include a brief, written directive which will outline the site(s) selection, the time(s), the system of vehicle selection (example: every car, every other car).
“2. The supervisors [sic] site selection for roadblocks for checkpoints will take into consideration the time of day, type of roadway, weather conditions, volume of traffic, the specific purpose of the detail, the number of personnel available, the amount of safety equipment available and the availability of adequate supervision.”
Nothing in said General Order requires that site selection be based on prior alcohol related arrests or incidents. It would appear that such a consideration is not required by either case law or by general police practice. For example, the Sample Set of Sobriety Checkpoint Guidelines Written for the New York City Police Department, relative to site selection, states: “Since public relations and deterrence are a primary purpose of the checkpoint, the incidence of DWI arrests and accidents is not controlling.” (Gerstenzang, Handling the DWI Case in New York, Appendix 1, at 1-3 [2002-2003 ed].) Therefore, the sobriety checkpoint in question cannot be invalidated because of a lack of empirical evidence of prior alcohol related arrests or accidents at that site.
B. Selection of the Site of Sobriety Checkpoint by the Police Chief
The relevant general order requires that the site of the sobriety checkpoint “must be approved by a supervisor prior to *450 commencing the checkpoint or roadblock.”[3] Sergeant Small of the Webster Police Department testified that he was the road patrol supervisor on the evening/morning the sobriety checkpoint in this case was set up, and which resulted in the arrest of the defendant. Based on the Webster Police Department General Order, Sergeant Small had the requisite authority to set up the roadblock on New York State Route 104 as same came through the Town of Webster by the Dewitt Road overpass. There is nothing in General Order 504 of the Webster Police Department which requires the chief of police to establish the specific site of a sobriety checkpoint at any given time. Nor is there anything in any controlling case law which would require the chief of police to micromanage that part of his department’s operation.
Defense counsel’s reliance on People v Velit (2002 NY Slip Op 50066[U] [Crim Ct, Queens County 2002]) is misplaced. In that case the court stated that “the existence of a set of guidelines was never even mentioned during the course of the suppression hearing.” (2003 NY Slip Op 50066[U], *8.) In this case the existence of police department guidelines on the issue of sobriety checkpoints was never an issue. The defense contends that the police did not properly follow their own guidelines or at best misapplied them. Nevertheless, the instant sobriety checkpoint set up by the Webster police eastbound on New York State Route 104 cannot be invalidated based on the fact that said location was not selected by the proper Webster police official.
Suppression Motion
The motion of the defendant to suppress any and all evidence derived from the sobriety checkpoint is hereby denied. The evidence elicited at the Scott hearing established that the site of said sobriety checkpoint was not improperly selected. No prior empirical evidence of alcohol related arrests or accidents at a particular site is required before that site can be used for a sobriety checkpoint. Nor did the facts establish that a proper Webster police official failed to pick the site selected for said roadblock.

. People v Scott (63 NY2d 518 [1984]) established the standards for conducting sobriety checkpoints in the State of New York.

. The directive to which defense counsel refers was for September 13, 2002 to September 14, 2002 and was attached to Webster Police General Order 504.

. Webster Police General Order 504, para IV (1) (a).